UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

MELISSA LEA O'NEIL,

        Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITYADMINISTRATION,

        Defendant.

6:15-cv-01752-YY

OPINION AND ORDER

YOU, Magistrate Judge:

## INTRODUCTION

Plaintiff, Melissa Lea O'Neil ("O'Neil"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401–433, and Supplemental Security Income ("SSI") under Title XVI of the SSA, 42 U.S.C. §§ 1381–1383f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with F.R.C.P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, that decision is AFFIRMED.

1 – OPINION AND ORDER

## ADMINISTRATIVE HISTORY

O'Neil protectively filed for DIB and SSI on June, 27, 2011, alleging a disability onset date of August 28, 2010. Tr. 128–30.[1] Her applications were denied initially and on reconsideration. Tr. 197, 206. On September 24, 2013, a hearing was held before Administrative Law Judge ("ALJ") Ted W. Neiswanger. Tr. 86–127. The ALJ issued a decision on October 31, 2013, finding O'Neil not disabled. Tr. 67–77. The Appeals Council denied a request for review on July 23, 2015. Tr. 1–3. Therefore, the ALJ's decision is the Commissioner's final decision subject to review by this court. 20 C.F.R. §§ 404.981, 416.1481, 422.210.

## BACKGROUND

Born in June, 1973, O'Neil was 40 years old at the time of the hearing before the ALJ. Tr. 128–29. In addition to a high school diploma, she took one year of college courses, and has past relevant work experience as a caregiver, phlebotomist, nursery school attendant, and receptionist. Tr. 75. O'Neil alleges she is unable to work due to the combined impairments of obesity, a cervical spine condition causing pain, bilateral knee problems, left shoulder impingement, myofascial pain, stomach problems, and depression. Tr. 69–70, 130, 156.

## MEDICAL BACKGROUND

O'Neill was injured in a 2007 motor vehicle accident in which she was ejected from her vehicle and sustained a concussion and fractures in her cervical spine and left clavicle. Tr. 397–98. She subsequently underwent surgery, including a fusion of C5-C6-C7 and

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed on April 26, 2016 (ECF #16).

2 – OPINION AND ORDER

discectomy. Tr. 386–90, 403. Later that year, O'Neil was diagnosed with a medial meniscal tear in her right knee, for which she had a meniscectomy in April 2008. Tr. 416–18.

In June 2008, O'Neil reported neck pain, headache, and depression following physical therapy for her knees. Tr. 423. She had an MRI the following month that showed mild foraminal narrowing at two levels of the cervical spine. Tr. 453. By September, O'Neil indicated she had used up all of her pain and depression medication, and complained of knee pain and instability. Tr. 473. She received a cortisone injection. Tr. 469.

One year later in August 2009, O'Neil sought treatment for acute abdominal pain. Tr. 544. She also reported upper back and neck pain. *Id.* She was provided Percocet for thoracic pain, and diagnosed with cervical radiculitis. *Id.* By December, O'Neil reported abdominal pain, but had no other complaints. Tr. 542.

In January 2010, O'Neil indicated she had fallen down, injuring her shoulders and neck. Tr. 540. She was diagnosed with a neck strain and provided Vicodin. *Id.* In March, O'Neil had an MRI that showed a solid fusion of C5-C7, as well as C5-6 degenerative disc disease. Tr. 523. O'Neil underwent another discectomy and fusion later that month to address the C5-6 level. Tr. 498.

By September 2010, O'Neil reported resolution of her pre-operative complaints, but indicated that she had experienced considerable left shoulder pain throughout the summer. Tr. 564, 566, 696. In October, she was diagnosed with left shoulder impingement syndrome. Tr. 627.

O'Neil established care with Michael Boespflug, M.D., in January 2011. Tr. 820. He noted chronic neck pain with mild hand numbness, but no radiculopathy. He also

3 – OPINION AND ORDER

assessed myofascial pain syndrome in the neck and upper back. Tr. 820. O'Neil repeatedly experienced shoulder and neck pain over the following months, despite doing stretching exercises and physical therapy and taking anti-inflammatory medication. Tr. 817.

In September 2011, O'Neil reported a sudden onset of right knee pain while walking. Tr. 723. An MRI showed a full thickness cartilaginous tear involving the lateral femoral condyle. Tr. 731. She subsequently had arthroscopic surgery to address the medial and lateral condyle. Tr. 798. O'Neil continued to report tenderness in her neck and shoulder, and Dr. Boespflug diagnosed cervical radiculopathy with myofascial pain syndrome and right knee arthritis. *Id.* Her left shoulder pain worsened again in January 2012. Tr. 679, 794. She was reported to be markedly depressed during her cervical surgery recovery. Tr. 681. A cervical MRI in February 2012 showed no spinal stenosis, with stable lower cord atrophy and myelomalacia. Tr. 677. Mild degenerative changes were noted at the cervical fusion levels. Tr. 678.

In April 2012, O'Neil reported significant *right* knee soreness causing her to limp for which she received a steroid injection. Tr. 712. An MRI of her *left* knee the following month revealed a tear in the meniscus root. Tr. 737. In June, Dr. Boespflug diagnosed internal left knee derangement with meniscal tear and cyst and trachantric bursitis/tendinitis in the right hip, and continued to diagnose myofascial pain syndrome in the left side of the neck. Tr. 786. In the following months, O'Neil was diagnosed with irritable bowel syndrome ("IBS"), and had another arthroscopic knee procedure. Tr. 879, 883, 989.

On September 18, 2012, Dr. Boespflug completed a questionnaire prepared by O'Neil's attorney. Tr. 837–40. The doctor set forth O'Neil's multiple diagnoses, and noted she could reach in front of her torso less than one third of the day on the left side, and would

require breaks following the performance of fine and gross manipulations. *See id.* He opined O'Neil would not be able to complete a normal workday two days per month due to her impairments. Tr. 840. Two months later, O'Neil had another left knee steroid injection. Tr. 875.

In January 2013, O'Neil reported that she was no longer able to attend pool physical therapy. Tr. 899. She continued to endorse left-sided neck pain and bilateral knee pain. *Id.* She was advised to find a way to continue pool physical therapy and to attempt to lose weight. *Id.* Her left knee pain worsened again in April 2013. Tr. 897.

In June 2013, x-rays of O'Neil's bilateral knees showed moderate-to-severe osteoarthtritic changes on the right and moderate changes on the left. Tr. 864. Depression and obesity were also indicated. *Id.* She received injections in both knees the following month. Tr. 859. At that time, it was noted that her gait was a "little bit shuffling" but not terrible. *Id.* The doctor again discussed weight loss with her. *Id.* The day after receiving these injections, O'Neill returned to the doctor and reported she had fallen at home and landed on her left shoulder. Tr. 893. Weight loss was again discussed, and she was commended for having lost some weight. *Id*.

## **DISABILITY ANALYSIS**

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), 416.909, 416.920(a)(4)(ii) & (c). Absent a severe impairment, the claimant is not disabled. *Id*.

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d); 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & (e), 416.920(a)(4)(iv) & (e). If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy. *Bowen v. Yuckert*, 482 U.S. 137,

142 (1987); *Tackett*, 180 F.3d at 1099; 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC. *Id*. If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g), 416.960(c).

## ALJ'S FINDINGS

At step one, the ALJ concluded that O'Neil had not engaged in substantial gainful activity since August 28, 2010, the alleged onset date of disability. Tr. 69.

At step two, the ALJ determined that O'Neil has the following severe impairments: morbid obesity; left shoulder impingement syndrome; degenerative joint disease of the cervical spine status post fusion surgery in 2007; bilateral knee arthritis; myofascial pain syndrome; bursitis and tendonitis of the lower extremities; and rectocele. *Id.*

At step three, the ALJ concluded that O'Neil does not have an impairment or combination of impairments that meets or equals any listed impairment. Tr. 70. The ALJ found that O'Neil has the RFC to perform light work, except she can only stand/walk for two hours total in an eight-hour day; stand for 10 minutes at a time or walk a quarter mile at a time before needing to sit; sit for a total of six hours in an eight-hour day; occasionally climb stairs, ramps, ropes, and scaffolds; occasionally stoop, kneel, crouch and crawl; perform occasional overhead reaching with the left upper extremity; and requires ready access to a restroom and freedom to go on an unpredictable schedule as needed, but no more than typical time away allowed in normal breaks. Tr. 70–71.

Based on the testimony of a vocational expert ("VE"), the ALJ determined at step four that O'Neil's RFC precluded her from returning to her past relevant work. Tr. 75.

At step five, the ALJ found that considering O'Neil's age, education, and RFC, she was capable of performing the occupations of document preparer, table worker, and toy stuffer. Tr. 76.

Accordingly, the ALJ determined that O'Neil was not disabled at any time through the date of the decision.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Ryan v. Comm'r Soc. Sec. Admin.*, 528 F.3d 1194, 1205 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn from the record.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)); *see also Lingenfelter*, 504 F.3d at 1035.

**DISCUSSION**

The issue on review is whether the ALJ's decision meets the proper legal standards and is based on substantial evidence in the record. O'Neil challenges the evaluation of (1) her symptom testimony; (2) the medical opinion of treating physician Dr. Boespflug; (3) omission of alleged mental impairments at step two; and (4) whether she retains the capacity to perform other work in the national economy.

**I.    O'Neil's Symptom Testimony**

The Act allows consideration of a claimant's symptom testimony. Pain allegations must correspond to a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A). The regulations subsequently direct the Commissioner to consider a claimant's statements regarding her symptoms. 20 C.F.R. §§ 404.1529(a); 416.929(a).

The Ninth Circuit directs a two-step process in evaluating a claimant's pain and symptom testimony. First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. Here, the claimant need only show that the impairment "could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (*reaff'd by Brown–Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015)). Second, absent evidence of malingering, the ALJ may conclusively reject a claimant's testimony as to the severity of her symptoms by offering "specific, clear and convincing reasons for doing so." *Brown–Hunter*, 806 F.3d at 493 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014)). Such findings must be "sufficiently specific to allow the reviewing court to conclude [that the ALJ] . . . did not arbitrarily discredit a claimant's

testimony." *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (*en banc*) (internal quotation omitted); *see also Brown–Hunter*, 806 F.3d at 493.

In her application materials and at her administrative hearing, O'Neil set forth several allegations regarding how her various impairments affect her ability to perform regular work activities. *See* tr. 326–33. O'Neil's chief complaints include debilitating chronic pain in her upper back and neck, bilateral knees, and hip. *Id.* She also alleges limitations due to depression and digestive issues. *Id.* Specifically, O'Neil indicated she may only stand for 10 minutes or walk a quarter of a mile before she must sit and rest. *Id.* She endorses difficulty moving her neck, and states she is limited to lifting no more than two pounds. *Id.* She described difficulty squatting, reaching, kneeling, and climbing stairs. *Id.* O'Neil further alleges difficulty managing basic personal care tasks. *Id.*

The ALJ found O'Neil's allegations inconsistent with her described activities of daily living. Inconsistency in testimony, or between a claimant's testimony and daily activities, has long been recognized as a valid factor in evaluating symptom allegations in the Ninth Circuit. *See, e.g.*, *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007). Here, the ALJ noted that despite O'Neil's allegation that she has extreme difficulty ambulating, and particularly climbing stairs, she lives in a second story apartment and is able to regularly ascend the 16 steps to her doorway. Tr. 74, 649. She told her doctor that her normal daily regimen included walks with her daughter, and that she did "a lot of stairs." Tr. 860. O'Neil argues the ALJ failed to appreciate that stair-climbing is painful for her. While O'Neil did indeed report pain, the record also reflects that physical therapy has been helpful to her in alleviating the pain. *Id.* The ALJ's observation is supported by substantial evidence, and this court must defer to the ALJ's decision where the evidence can support more than one rational interpretation. *Batson*, 359 F.3d at 1193.

The ALJ also noted that despite O'Neil's claim that she had difficulty standing and walking, she was able to stand comfortably during a 30-minute interview with an investigator from the Cooperative Disability Investigation Unit. Tr. 649. Following the interview, the investigator observed O'Neil walk 75 feet at a normal rate, then return to her apartment more than half a mile away on foot, without limping. Tr. 650. O'Neil contends that she appeared uncharacteristically able-bodied during the interview because she was nervous about the encounter with what she believed was an FBI agent, and benefited from a rush of adrenaline. Pl.'s Br., ECF #20, at 14. However, the investigator reported that O'Neil did not appear to be in any physical discomfort during the interview and she was cooperative and friendly throughout, which undercuts O'Neil's claim that she had an adrenaline rush. Accordingly, although O'Neil has an alternative interpretation of the episode in question, and of her ability to stand and walk in general, the ALJ's interpretation was rational and supported by substantial evidence. *See, e.g.*, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.") (citation omitted).

The ALJ also recognized that despite O'Neil's allegations that her physical limitations severely hamper or prevent her from doing household chores, preparing meals, doing yardwork, driving, and personal care, she is still able to perform tasks that are inconsistent with those claims. For example, although O'Neil claimed she could no longer drive in a functional report completed in 2011 (Tr. 329), during the hearing she related an anecdote about a recent incident that occurred while she was driving (Tr. 71, 108, 111). Further, despite O'Neil's allegations regarding mobility problems, she can grocery shop for two to three or more hours at a time. Tr.

11 – OPINION AND ORDER

74, 329. The ALJ additionally noted that only three months following knee surgery, O'Neil was able to join a gym and participate in water aerobics. Tr. 74, 701, 713, 860, 899.

In response, O'Neil argues that she continues to be significantly limited by pain, despite her abilities to perform the activities discussed by the ALJ. O'Neil explains, for example, that although her nutritionist recommended increased walking exercise in 2011, a different treating physician advised against weight-bearing exercise. Tr. 859; Pl.'s Br., ECF #20, at 8. However, the ALJ reasonably accounted for O'Neil's limitations by formulating an RFC that limits her to standing and walking only two hours out of an eight-hour day and not standing for more than 10 minutes at a time. Tr. 70. Again, although O'Neil has a different interpretation of the degree to which her daily activities are consistent with her alleged symptoms, the ALJ set forth valid reasons, supported by substantial evidence in the record, for his findings. Accordingly, the ALJ's findings must be upheld. *Molina*, 674 F.3d at 1111.

The ALJ also impugned O'Neil's symptom allegations because they were inconsistent with the objective medical record. Although inconsistency with the objective medical record cannot be the sole reason to reject a claimant's symptom testimony, it is a valid factor so long as the ALJ provides other rationales, such as those described *supra*. *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (plaintiff's claim that she had totally disabling pain was undermined by evidence of her daily activities). Here, the ALJ set forth numerous instances of minimal or non-existent clinical examination findings, despite O'Neil's allegations of debilitating impairment.

For example, in July 2010, O'Neil had full range of motion ("ROM") in her neck, and full strength, sensation, and deep tendon reflexes in her upper extremities. Tr. 72, 535. In January 2011, O'Neil exhibited intact sensation, motor functioning, and deep tendon reflexes.

Tr. 820.  In May 2011, treating physician Dr. Boesplfug recommended exercise, stretching, and anti-inflammatory medications to address shoulder pain complaints.  Tr. 817, 819.  Although an MRI taken that month showed tendinosis in her left rotator cuff, it was not a full-thickness tear.  Tr. 763.  Further, even though O'Neil complained of low back pain in a few months later in September 2011, the attending physician recorded negative straight leg raises, intact strength in the lower extremities, and normal gait.  Tr. 809.  The doctor recommended O'Neil optimize her walking and swimming regimen, and focus on weight loss.  *Id.*

The ALJ also noted that in early 2012, an MRI of O'Neil's surgically-fused cervical spine showed no spinal stenosis.  Tr. 678.  On examination, the treating physician reported normal gait and no crepitation or effusion, and that all joints were stable.  Tr. 680.  Nevertheless, the physician noted that O'Neil exhibited extreme discomfort with manipulation of any of her limbs through his ROM testing, so much so that he stated the exam results were "misleading" because she was not cooperative.  *Id.*  Despite her complaints, O'Neil showed good strength in all musculoskeletal areas, with the exception of mildly reduced findings in her left shoulder.  Tr. 73, 680.

The ALJ acknowledged that throughout 2012, O'Neil continued to have complaints related to both knees and also to her left shoulder.  She fell on her left knee in May 2012 and had pain, but a June x-ray of the knee showed only mild medical compartment narrowing and no significant arthritic changes.  Tr. 73, 711.  An MRI of the same knee showed a medical meniscus tear, which was addressed with an arthroscopic procedure in August 2012.  Tr. 73, 737, 883.  However, O'Neil's surgeon noted that despite the earlier interpretation of the MRI, "there was not a root tear at all," and noted she looked "very good" during the post-operative evaluation.  Tr. 74, 879.

13 – OPINION AND ORDER

The ALJ pointed out that by January 2013, O'Neil was described as having made "very nice improvement" with physical therapy. Tr. 74, 872. The doctor provided injections in both knees to address pain, but recommended O'Neil join a gym program to address the need for "a steady weight loss program and conditioning." Tr. 872. Although x-rays in May 2013 showed arthritic changes in both knees, she had pain-free ROM in her right knee (although the imaging showed greater changes on the right than the left), and full strength in both lower extremities. Tr. 863–64. Thereafter, O'Neil still reported she could walk with her daughter regularly, and that she was able to do "a lot of stairs." Tr. 860.

Based on the ALJ's foregoing examination of the medical record, he acknowledged that O'Neil experiences pain with certain activities and found that she has impairments which substantially limit her ability to perform work, particularly in regard to her bilateral knees, left shoulder, and neck. However, the ALJ set forth a clear record of how the objective examination findings were not as disabling as O'Neil alleged. Additionally, the ALJ supported the finding that following appropriate treatment, O'Neil's symptoms improved. Importantly, despite O'Neil's limitations, her treating providers continued to encourage O'Neil to focus on finding ways to stay active and address her weight, which was seen as a contributing factor to her various physical problems. Although O'Neil described her limitations as so severe that she was frequently relegated to staying in her home and bed, unable to perform even basic activities including self-care, the objective medical evidence does not reflect such severe limitations. For these reasons, the ALJ's findings are supported by substantial evidence.

This Court is tasked with determining whether substantial evidence supports the Commissioner's ultimate decision that the claimant is not disabled; not whether substantial evidence *could* support a disability finding. *See Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th

Cir. 1997). On this record, it is clear the ALJ carefully considered O'Neil's medical history, and provided specific references to the record in making findings that O'Neil's limitations do not preclude her from performing full-time work. As such, the findings must be affirmed. *See Batson*, 359 F.3d at 1193 (reviewing Court must defer to ALJ's decision where evidence can support more than one rational interpretation) (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)).

## II.     Medical Opinion Evidence

O'Neil next assigns error to the ALJ's assessment of treating physician Dr. Boespflug's medical opinion. The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Tommasetti*, 533 F.3d at 1040.

Here, Dr. Boespflug's opinion that O'Neil could stand and walk for less than two hours per day, was limited in reaching and performing fine and gross manipulations with her left extremity, and would miss two days per month, was contradicted by the State agency reviewing physicians. Accordingly, the relevant legal standard requires the ALJ present specific-and-legitimate reasons to discredit Dr. Boespflug's opinion.

The ALJ found Dr. Boespflug's opinion primarily based on O'Neil's subjective complaints. When an ALJ finds a claimant's subjective complaints not credible, an ALJ may impugn a doctor's opinion to the extent it is based on discredited complaints. *Morgan*, 169 F.3d at 602. The ALJ explained that the functional limitations Dr. Boespflug described—including lifting 10-20 pounds occasionally, occasionally reaching overhead with her right and less than occasionally with her left upper extremity, limited fine and gross motor skill activity, and standing and walking limitations—did not appear to be based on objective testing. Tr. 75.

In response, O'Neil argues that although Dr. Boespflug "did not address [her] ability to work overhead with her left arm," he did find that she was "limited to reaching in front of her torso only up to one-third of the day on the right and less than one-third on the left." Tr. 839, Pl.'s Br., ECF #20, at 17. However, O'Neil's argument is not responsive to the ALJ's concern that the doctor's opinion is unsupported by objective evidence. Although O'Neil contends that Dr. Boespflug reviewed the records of other physicians, virtually none of the records cited by O'Neil depict abnormal clinical testing results of her upper extremities. *See* Pl.'s Br., ECF #20, at 17; tr. 711, 714–19, 721, 724, 729, 741, 756, 843, 854, 856. Although a single chart note from a physical therapy appointment in 2012 indicated that O'Neil had reduced ROM in her cervical spine, it also indicated that she "is now able to lift/carry weights without symptoms." Tr. 743. Additionally, although O'Neil argues a nerve conduction study revealed neuropathy (Tr. 558), no

objective testing of record supports any functional limitation arising from neuropathy. Pl.'s Reply, ECF #28, at 7; *see, e.g.*, *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ is not required to accept medical conclusions that do not explain how they are supported by clinical findings).

Based on the foregoing, the record is at best ambiguous regarding her manipulative limitations. The court is bound to defer to the ALJ's resolution of ambiguity in the medical evidence. *See Tommasetti*, 533 F.3d at 1041–42 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995)). Moreover, O'Neil does not contest the ALJ's other findings as to Dr. Boespflug's opinion of her limitations in lifting and carrying, standing and walking, or absenteeism. Tr. 75; Pl.'s Br., ECF #20, at 17, Pl.'s Reply, ECF #28, at 6–7. Accordingly, any such argument is waived. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) (court shall review only issues which are argued specifically and distinctly in a party's opening brief). The court therefore affirms the ALJ's reasonable interpretation of the record.

## III.     Step Two Assignment of Error

At step two of the sequential evaluation process, the ALJ found multiple severe and non-severe impairments, but did not make findings as to mental impairments. Tr. 69–70. An ALJ cannot find an impairment severe at step two "if it does not significantly limit [one's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). In other words, an impairment is not severe unless it has more than a minimal effect on an individual's ability to work. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). The claimant carries the burden of proof to establish severe impairments at step two. 20 C.F.R. §§ 404.1505 & 1509, 416.905, 416.909.

17 – OPINION AND ORDER

O'Neil does not dispute that she failed to invoke depression or anxiety as contributing to her alleged disability during the administrative hearing. The record contains several relevant references to her mental health. For instance, three years prior to the adjudication period in this case, a diagnosis of depression was noted by Edward H. Piepmeier, M.D., who had apparently been prescribing Prozac to O'Neil. Tr. 421. Several months prior to the adjudicative period, Dr. Boespflug listed "anxiety/depression" as an issue, and appeared to prescribe Wellbutrin. Tr. 820. Further, a physician assistant opined that O'Neil was "markedly depressed" at a follow-up appointment following her cervical spine fusion. Tr. 679–80. Other records note that she appeared to have an anxious manner, and that she at times had taken Prozac and Cymbalta. Tr. 910.

However, there is no indication in the record that O'Neil's alleged anxiety and depression caused more than a minimal impact on her ability to perform work, and O'Neil has not offered any objective evidence in support of specific workplace limitations. O'Neil contends that she reported in her application that she "cries a lot, which causes difficulty getting along with others," but the record she cites describes crying due to pain. Tr. 331. There are relatively few references to anxiety and depression in the record as a whole, and treating physician Dr. Boespflug's medical opinion document did not include anxiety or depression in his list of active diagnoses. Tr. 716, 796, 820, 837, 989. Indeed, no doctor of record opined that O'Neil has any mental limitation that impairs her ability to function in any way. Accordingly, O'Neil did not carry her burden of proof at step two.

Moreover, even if, for the sake of argument, the ALJ had erred by failing to consider anxiety and depression at step two, O'Neil has not shown that the error was harmful. Step two errors are not harmful where, as here, the step is adjudicated in a claimant's favor. *Burch v.*

*Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). The error is only harmful where the omission adversely impacts subsequent steps of the evaluation process. *Id.* Again, although O'Neil alleges anxiety and depression resulted in functional limitations, she has not presented any substantial evidence, aside from her own subjective conclusions. Further, there is no indication that any anxiety or depression persisted, or was expected to persist, at a significant level for at least 12 months. *See* 20 C.F.R. §§ 404.1509, 416.909. In light of the court's deferential standard of review, the dearth of substantive support for significant functional limitation due to mental impairment precludes reversal of the ALJ's findings.

Alternatively, O'Neil argues this case should be remanded in order for the ALJ to further develop the record relative to her anxiety and depression allegations. Pl.'s Br., ECF #20, at 19. However, the ALJ's duty to further develop the medical record is triggered in only narrow circumstances. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). For example, when a claimant is not represented by counsel, the duty to further develop the record by re-contacting physicians of record or ordering a consultative examination is heightened. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). That heightened standard is not applicable here. Additionally, in order for a Ninth Circuit court to remand for further development of the record, a claimant must demonstrate that an ALJ's error resulted in prejudice. *McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011); *see also Garcia v. Comm'r Soc. Sec. Admin.*, 768 F.3d 925 (9th Cir. 2014). For the reasons set forth in the harmless error discussion above, O'Neil has not shown that the ALJ's omission resulted in prejudice. Accordingly, O'Neil's assignment of error is unavailing.

///

///

## IV. Step Five Assignment of Error

O'Neil contends the ALJ erred in identifying other occupations she is able to perform in the national economy at step five. Unlike the previous steps of the sequential evaluation process, the burden of proof for establishing non-disability rests with the Commissioner at step five. *Tackett*, 180 F.3d at 1098. In order to meet the burden, the ALJ must elicit testimony from a VE who determines if, based on the claimant's RFC, a significant number of appropriate occupations exists in the national economy. For the VE's answers to pass muster, the ALJ's hypothetical questions must include all of the functional limitations supported by substantial evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) (citation omitted). O'Neil contends that the ALJ's hypothetical questions were deficient because they did not include all of the limitations set forth in Dr. Boespflug's September 2012 opinion. Pl.'s Br., ECF #20, at 20; *see* Tr. 837–40.

However, as discussed above, the ALJ did not err in evaluating and according diminished weight to Dr. Boespflug's opinion. As such, the ALJ was not required to include the doctor's functional limitations in the RFC or in the hypotheticals offered at the administrative hearing. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008). Therefore, the court does not find ALJ error at step five.

## **ORDER**

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

DATED this 31st day of March, 2017.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge

20 – OPINION AND ORDER